IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEVEN M. SCHENCK,          )
                            )
Plaintiff,                  )
                            )
    vs.                     )     NO. 3:09-CV-238
                            )
BRAD ROGERS, Captain, *et al.*, )
                            )
Defendants.                 )

**OPINION AND ORDER**

This matter is before the court on the Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court **GRANTS** the motion for summary judgment in part and **DENIES** it in part.

BACKGROUND

While he was confined as a prisoner at the Elkhart County Jail, Plaintiff Steven Schenck filed a complaint and amended complaint alleging that jail officials failed to treat him for serious and painful dental problems while he was confined at the jail. The defendants are Elkhart County Sheriff Mike Books, Jail Captain Brad Rogers, and Lieutenant Sam Naves. This court screened the amended complaint pursuant to 28 U.S.C. section 1915A, and granted the Plaintiff leave to proceed against the Defendants on his Eighth Amendment failure to treat claim. (DE 15).

SUMMARY JUDGMENT STANDARD

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corporation. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of

summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original). *See also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will not be appropriate.

DISCUSSION

In his amended complaint, Schenck alleged that while he was at the Elkhart County Jail he did not have "any top teeth or back bottom teeth, [and that his] front and side bottom teeth were grinding up against the top gums causing great pain when trying to chew food." (DE 14 at 4). Despite his requests, Schenck alleged that the Defendants refused to either provide him dental care to replace his teeth or to provide him a nutritious and balanced diet that he could eat even with his missing teeth. He alleged that he suffered pain from trying to eat without teeth and that he was unable to consume enough food to be adequately nourished.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner

of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (*cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "'[d]ental care is one of the most important medical needs of inmates." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir.1980).

In medical cases, the Eighth Amendment test is expressed in terms of whether the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez v. Peters,* 111 F.3d at 1373.

Deliberate indifference is comparable to criminal

recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (Citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 837. The *Farmer* test contains an objective prong (whether there is a serious medical need), and a subjective prong (whether the defendants were deliberately indifferent to that need). *Id.*

In support of their motion for summary judgment, the Defendants submit the affidavits of Corrections Officer Tammy Bender and Cheryl Strahle, RN, a grievance report detailing all of the grievances Schenck filed while he was at the jail, trip activity logs showing when Schenck was taken from the jail to outside dental appointments, a copy of Schenck's deposition, a copy of the jail's policy on development and delivery of health care services, copies of requests for health care and grievances dealing with his dental care submitted by Schenck, copies of Schenck's response to interrogatories, and copies of Schenck's medical and dental records from the jail and the Indiana Department of Correction. In response, Schenck filed a memorandum and submitted portions of his medical and dental records, and portions of his resident grievance report with his own annotations.

The parties' submissions establish that long before he arrived at the Elkhart County Jail Schenck was struck in the face with a baseball bat and many of his teeth were knocked out. (DE 100-3 at 7-8). Schenck wore partial dentures, but by the time he arrived at the jail he could no longer wear them and was having problems with many of his remaining teeth. (DE 100-3 at 25).

Schenck arrived at the jail on October 18, 2008, and remained there until June 19, 2009, when he was transferred to the Indiana Department of Correction. (DE 100-2 at 2). Schenck returned to the jail on January 27, 2010, and remained there until his release on April 28, 2010. (DE 100-2 at 2).

The jail contracted with Correct Care Solutions ("CCS") to provide medical and dental services to inmates. (DE 100-6 at 1). On February 8, 2009, Schenck began experiencing dental pain (DE 100-3 at 20) and over the next few weeks he saw CSS medical and dental personnel on a number of occasions for evaluation and treatment.

0n February 17, 2009, Dr. Carter extracted four of Schenck's teeth because they were "periodontally involved and nectoric." (DE 100-6 at 4). On March 23, 2009, Dr. Carter extracted two more of Schenck's teeth. (DE 100-6 at 4). On May 11, 2009, Dr. Carter extracted another of Schenck's teeth because it was infected. (DE 100-6 at 6). This left Schenck with "six or seven" teeth in the bottom of his mouth but no upper teeth. (DE 100-3 at 6).

Schenck says that the last of his top teeth were pulled on

6

March 24, 2009, (DE 100-3 at 20), that without upper teeth or upper dentures he was unable to eat much of the food that was served him, and that trying to eat the food served to him caused him pain. Jail officials placed him on a soft diet, but Schenck states that even so, he could not eat some of the food that was served to him. (DE 100-3 at 20-21).

Between April 20 and April 22, 2009, Schenck went on a hunger strike because he "couldn't eat anyway, man. I got tired of my gums getting cut up. My gums were sore. I couldn't eat nothing man. . . I didn't get no response back. And I said 'well, come 4/20, I'm going on my strike." (DE 100-3 at 18). After his hunger strike ended, Lt. Naves authorized upper dentures for Schenck, and Aspen Dental fitted him with a complete set of top dentures, which he received on June 12, 2009. (DE 100-3 at 34).

Claims Against Sheriff Mike Books

The amended complaint did not specify whether Schenck's damage claims against Sheriff Books were in his official or individual capacity. In his deposition, Schenck stated that his claim against Sheriff Books was "in his official capacity. He runs the jail. That's why there's a chain of command . . ." (DE 100-3 at 6).

"[A] suit against a[n] . . . official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Municipalities cannot be held liable for damages under section 1983 unless a governmental policy

7

or custom caused the alleged violation of the plaintiff's rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). For liability to attach against a municipality under section 1983, a plaintiff must show that "*deliberate* action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997) (Emphasis in original). "Municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pemaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Schenck does not allege that he was denied dentures or a nutritious diet he could eat as a result of an official policy established by the Sheriff. Accordingly, he has not stated an official capacity claim against the Sheriff.

Even if Schenck lodged a personal capacity damage claim against Sheriff Books, it would not survive summary judgment because section 1983 creates a cause of action for damages based on personal liability; a plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains. *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir.

2009).  The doctrine of *respondeat superior*, under which a supervisor may be held liable for an employee's actions, has no application to section 1983 actions.  *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993).

Schenck's deposition responses establish that he sued Sheriff Books not because of any decision the sheriff made personally, but "because he's the overseer of the whole jail" (DE 100-3 at 6), suggesting that the sheriff is responsible for the acts of his subordinates.  Accordingly, Sheriff Books is entitled to summary judgment on any personal capacity damage claims against him.

Claims Against Jail Captain Brad Rogers

Schenck alleges that he dealt directly with two jail officials, Captain Rogers and Lieutenant Naves.  In his deposition, Schenck states that he sought dentures, that "Lieutenant Naves refused me of that care" (DE 100-3 at 4), that he then petitioned Captain Rogers who met with him once, and that Captain Rogers told him he was going to Aspen Dental.  (*Id.*).  Schenck states in his deposition that Lt. Naves was the one who subsequently made the decision to only give him upper dentures.  (DE 100-3 at 9). Schenck has not stated sufficient personal involvement by Captain Rogers in the alleged denial of dental care, and Captain Rogers cannot be held responsible for the acts of his subordinate, Lt. Naves, under the doctrine of *respondeat superior*.  *Moore v. State of Indiana*, 999 F.2d at 1129.  Accordingly, Captain Rogers is entitled to summary judgment on Schenck's claims against him.

9

Claims Against Lieutenant Sam Naves

In his amended complaint, Schenck alleges that because he lacked any dentures or upper teeth between March 24 and June 12, 2009, he was unable to eat most food and that even after he got his upper dentures he was unable to eat a lot of the food because the dentures did not sit right and he had no lower back teeth.

In his deposition, Schenck concedes that although Lt. Naves initially resisted it (DE 100-3 at 25), the Defendants provided him with a soft diet that he could eat and with boost.[1] (DE 100-3 at 17, 19 - 22). The jail doctor ordered Schenck a "soft diet to make it easier for you to eat." (DE 100-3 at 21). The Defendants' submissions establish that when he entered the jail in October 2008, Schenck weighed 198.4 pounds. In April 2009, he was weighed eight times, and his weight varied from 192 and 199 pounds. (DE 100-6 at 8).

The parties' submissions establish that the jail attempted to provide Schenck with a soft diet that he could eat, provided him Boost drinks, and that he suffered no serious weight loss. Thus, the Defendants were attempting to resolve Schenck's nutritional problems and are entitled to summary judgment on the nutrition claim on the subjective prong of the *Farmer* test.

Schenck asserts that his old dentures did not fit when he arrived at the jail and that his need for new dentures became acute

---

[1] Boost is "a nutritional supplement that provides an individual's nutrients." (DE 100-6 at 9).

beginning on March 24, 2009, when his last upper teeth were removed. On May 5, 2009, after his hunger strike, Schenck was sent to Aspen Dental for evaluation and fitting of dentures (DE 100-2 at 56). He was seen again by Aspen Dental on June 9, 2009, (DE 100-2 at 60), and on June 12, 2009, he was seen by Aspen Dental and given upper dentures (DE 100-2 at 62). He was never provided lower dentures, and alleges that he was unable to eat solid food without the lower dentures that would have provided him back teeth.

Schenck did not sue the dentists who saw and treated him, he sued jail custody officials. According to Schenck, Lt. Naves denied him dentures before his hunger strike, and the parties agree that Lt. Naves was the official who eventually made the decision to provide Schenck with upper dentures but not lower dentures. (DE 100-3 at 910; DE 100-6 at 8).

Lt. Naves asserts that despite his lack of teeth Schenck did not need dentures. Lt. Naves did not submit an affidavit of his own, and the only evidence he submitted suggesting that CCS did not think Schenck needed dentures is Nurse Strahle's affidavit, in which she states that she is an employee of Correct Care Solutions and that dentures would be provided to inmates if the "physician or dentist determines that the health of the inmate will be adversely affected where the device is not provided and the facility approves such a device . . ." (DE 100-6 at 7). She further states that:

> CCS Policy J-E-06 states that . . . "Dental prosthetics such as partial plates and dentures will not be provided unless medically necessary for the detainee to function within the detention setting."

11

> \* \* \*
> Based upon CCS's evaluation and treatment of Schenck while he was incarcerated at the Corrections Facility, CCS determined that it was not medically necessary for Schenck to receive dentures or for the bone-mass in Schenck's mouth to be ground down in order to function within the Corrections Facility. This was based upon CCS's observations that Schenck was maintaining his weight, consuming the diets that he received, and did have numerous[2] teeth in the bottom of his mouth. Notwithstanding this medical determination, Lt. Sam Naves made the decision to provide Schenck with upper dentures and to transport Schenck to Aspen Dental for preparation of the dentures. Lt. Naves informed me that he made this decision solely because Schenck repeatedly requested that he be provided with dentures, not because any determination was made by CCS or the Correctional Facility that such was medically necessary.

DE 100-6 at 7-8.

This passage is crucial because if CCS physicians or dentists told Lt. Naves that Schenck did not need dentures then any delay by Lt. Naves in providing the top dentures and the refusal to provide bottom dentures at all does not constitute deliberate indifference. This is true even if CCS's recommendation was wrong because correctional staff are entitled to rely on the judgment and recommendations of medical professionals.

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

---

[2] The evidence is that Schenck had six or seven lower front teeth left. The Court questions if six or seven teeth can be considered "numerous."

12

*Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *citing Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004).

Lt. Naves has not provided affidavits from the dentists who saw and treated Schenck stating that they concluded that top and bottom dentures were not necessary in his case, nor does he point to documents in the record where the treating dentists or CSS officials made such a determination in writing. In regard to Nurse Strahle's affidavit, it does not appear that she has the personal knowledge necessary to state that CSS determined that top and bottom dentures were not medically required.

Nurse Strahle's statement that Lt. Naves told her that he only authorized top dentures for Schenck because he kept asking for them not because they were medically necessary is hearsay, just as Schenck's statements in his deposition that the dentists treating him told him that he needed top and bottom dentures but that the jail was unwilling to pay for them (DE 100-3 at 10, 17, 34) are hearsay. If Nurse Strahle is relying on the hearsay statement Lt. Naves's made to her for the proposition that CCS determined that dentures were not medically necessary, then her statement is based on inadmissible evidence.

Lt. Naves, as the movant, bears the burden of establishing the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, and a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255. Lt. Naves has not provided admissible evidence establishing the lack of a genuine

issue of material fact on the question of whether he was deliberately indifferent to a serious medical need.  Accordingly, the Court will deny summary judgment to Lt. Naves on this question.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for summary judgment (DE 99) in part and **DENIES** it in part. The Court **DENIES** Defendant Sam Naves summary judgment on the Plaintiff's claim that Defendant Naves was deliberately indifferent to Schenck's serious need for dentures, and **GRANTS** the Defendants' motion for summary judgment in all other respects.  If Defendant Naves believes he has admissible evidence establishing that CCS medical staff made a determination that dentures were not medically necessary, he may ask this Court to reopen the time within which to file a motion for summary judgment.

**DATED: March 11, 2011**         **/S/RUDY LOZANO, Judge**
                                  **United States District Court**